# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
## 2025 MSPB 1

Docket No. DC-1221-21-0203-W-1

**Mary Reese,**

**Appellant,**

**v.**

**Department of the Navy,**

**Agency.**

January 31, 2025

Richard R. Renner, Esquire, Raleigh, North Carolina, for the appellant.

Kristin Roberts, Esquire, and Michael S. Causey, Esquire, Washington, D.C., for the agency.

Andres M. Grajales, Esquire, Washington, D.C., for amicus curiae, the American Federation of Government Employees.

Debra D'Agostino, Esquire, Washington, D.C., and Rosa M. Koppel, Esquire, McLean, Virginia, for amicus curiae, the National Employment Lawyers Association and the Metropolitan Washington Employment Lawyers Association.

Julie D. Yeagle, Esquire, and Gregory Giaccio, Esquire, Washington, D.C., for amicus curiae, the Office of Special Counsel.

Martin Akerman, Arlington, Virginia, pro se, amicus curiae.

Pere Jarboe, Annapolis, Maryland, pro se, amicus curiae.

## BEFORE

Cathy A. Harris, Chairman*
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member**

*The Board members voted on this decision before
the effective date of Acting Chairman Kerner's designation.
**Member Kerner recused himself and
did not participate in the adjudication of this appeal.

**OPINION AND ORDER**

¶1 The appellant has filed a petition for review of the initial decision, which denied her request for corrective action in this individual right of action (IRA) appeal. For the reasons set forth below, we DENY the petition for review. We AFFIRM the initial decision, as MODIFIED, to consider the appellant's claims of additional protected activity unaddressed in the initial decision and to supplement the administrative judge's analysis of whether the agency rebutted the appellant's prima facie case of reprisal. In so doing, we resolve some of the questions of law addressed in the order to the parties and the *Federal Register* notice issued by the Board in this case, *see* 89 Fed. Reg. 28816-01 (Apr. 19, 2024), and thereby clarify the scope of 5 U.S.C. § 2302(b)(9)(C), which prohibits reprisal for "cooperating with or disclosing information to the Inspector General (or any other component responsible for internal investigation or review) of an agency, or the Special Counsel, in accordance with applicable provisions of law."

BACKGROUND

¶2 The appellant joined the agency in May 2019, as a Public Affairs Specialist. Initial Appeal File (IAF), Tab 75 at 4. In a January 2020 performance assessment, the agency described her contributions during 2019 positively. IAF, Tab 12 at 21-24. However, the agency terminated the appellant that same month during her probationary period. *Id.* at 25-33. The termination letter described her work products as typically adequate but indicated that the agency was nevertheless terminating her for, inter alia, "rude, disrespectful, insubordinate, and demeaning" conduct, her "refus[al] to interact with coworkers due to a perceived slight," her "instigat[ing] and escalat[ing] interactions . . . on what should be simple coordination actions," and her filing a complaint about a coworker that the agency deemed to be "false and misleading." *Id.* at 27-28. The appellant's first-line supervisor signed the termination letter, stating that he had seen this conduct

himself, that the appellant's second-level supervisor had reported similar conduct, and that the appellant's conduct had persisted despite counseling. *Id.* at 28, 32.

¶3 Following her probationary termination, the appellant filed a complaint with the Office of Special Counsel (OSC) alleging whistleblower reprisal. IAF, Tab 7 at 9, Tab 8 at 4-9. OSC terminated its investigation in December 2020, IAF, Tab 8 at 18-21, and this IRA appeal followed, IAF, Tab 1.

¶4 The administrative judge determined that the appellant established jurisdiction over some of her allegations. IAF, Tab 18. In particular, the administrative judge concluded that the appellant presented nonfrivolous allegations regarding the following alleged whistleblowing disclosures and activities that she also exhausted with OSC: (1) disclosures about meetings between her first-line supervisor, second-line supervisor, other agency officials, and a Government contractor, which the appellant deemed improper; (2) disclosures that her second-line supervisor was improperly instructing employees to change the dates on files related to congressional inquiries; (3) disclosures that she feared a particular coworker might bring a firearm to the office to commit a mass shooting; (4) disclosures that her supervisors were not properly handling reports of sexual harassment and assault in the workplace; and (5) a complaint the appellant filed with the agency's Office of Inspector General (OIG). *Id.* at 2-5. The administrative judge also considered a handful of alleged retaliatory personnel actions but found that the appellant met her jurisdictional burden for just one—her probationary termination. *Id.* at 6-10.

¶5 Although the appellant initially requested a hearing while the appeal was pending before the administrative judge, she withdrew that request. IAF, Tab 1 at 2, Tab 76 at 4. After affording the parties the opportunity to make closing submissions, the administrative judge issued an initial decision, which denied the appellant's request for corrective action on the merits. IAF, Tab 86, Initial Decision (ID). On the merits, the administrative judge found that the appellant did

not prove that her disclosures were protected under 5 U.S.C. § 2302(b)(8), but she did prove that her OIG complaint was protected under 5 U.S.C. § 2302(b)(9)(C). ID at 13-28. The administrative judge further found that the appellant proved that this protected activity was a contributing factor in the appellant's probationary termination. ID at 28-29. Lastly, the administrative judge found that the agency successfully rebutted the appellant's prima facie case of reprisal. ID at 29-41.

¶6 The appellant has filed a petition for review, which exclusively addresses her probationary termination and does not reassert any other alleged personnel actions.[1] Petition for Review (PFR) File, Tab 3. She first argues that she engaged in more protected whistleblowing than found by the administrative judge. *Id.* at 19-27. Next, the appellant argues that her whistleblowing was a contributing factor in her probationary termination and that the agency failed to rebut her prima facie case of reprisal. *Id.* at 28-38. Finally, the appellant presents arguments about the administrative judge's procedural rulings. *Id.* at 38-40. The agency has filed a response to the appellant's petition for review, and the appellant has replied to that response. PFR File, Tabs 7, 10.

¶7 After the filing of the petition, response, and reply, the Board sought amicus briefs on how to interpret and apply 5 U.S.C. § 2302(b)(9)(C). Notice of Opportunity to File Amicus Briefs, 89 Fed. Reg. 28816-01 (Apr. 19, 2024). In particular, the Board sought guidance on whether complaints covered under 5 U.S.C. § 2302(b)(9)(A) are precluded from coverage under 5 U.S.C. § 2302(b)(9)(C), whether activity that falls within the protections of Title VII may also be protected by section 2302(b)(9)(C), and whether section 2302(b)(9)(C) encompasses, among other things, informal discussions with someone from an agency component that might conduct investigations and formal interviews with

---

[1] Because the appellant has not challenged the administrative judge's conclusion that her probationary termination was the sole personnel action within the Board's jurisdiction, we have not considered any of the other personnel actions that the appellant originally alleged.

someone who is appointed as a fact finder but who is not otherwise part of a formal investigatory office or component. *Id.* Five individuals or entities, including OSC, filed amicus briefs. PFR File, Tabs 17-21. In addition, the Board issued an order to the parties to this appeal seeking their arguments about the same matters. PFR File, Tab 14. Both parties responded and subsequently filed reply briefs. PFR File, Tabs 22-23, 25-26. We have considered all of the filings on review in making our decision.

## ANALYSIS

¶8 At the merits stage of an IRA appeal, the appellant must prove by preponderant evidence that she made a protected disclosure under 5 U.S.C. § 2302(b)(8) or engaged in an activity protected by 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and that such disclosure or activity was a contributing factor in an agency's personnel action. *Turner v. Department of Agriculture*, 2023 MSPB 25, ¶ 12. If the appellant meets that burden, the agency is given an opportunity to prove by clear and convincing evidence that it would have taken the same personnel action absent the protected disclosure or activity. *Id.*; *see* 5 U.S.C. § 1221(e)(1)-(2).

¶9 In the analysis that follows, we agree with the administrative judge's decision to deny the appellant's request for corrective action. However, we modify the initial decision in several respects. Most notably, we address the most recent version of 5 U.S.C. § 2302(b)(9)(C) and explain how it protects some of the appellant's activities. In terms of the three questions identified in the *Federal Register* notice and the Board's order to the parties, we do not reach the first question because the appellant did not engage in activity protected under 5 U.S.C. § 2302(b)(9)(A), and we answer the other two questions in the affirmative.

<u>The appellant did not prove that she made disclosures protected by 5 U.S.C. § 2302(b)(8).</u>

¶10    The appellant argues that what the administrative judge characterized as disclosures (1)-(4), described above, were disclosures protected by 5 U.S.C. § 2302(b)(8).  PFR File, Tab 3 at 19-27.  She further argues that disclosures (1), (2), and (4) were accompanied by activity protected by 5 U.S.C. § 2302(b)(9)(B), (C), and (D).  We will address each argument in turn.

¶11    A disclosure is protected under section 2302(b)(8) if an appellant reasonably believed that it evidenced any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.  *Turner*, 2023 MSPB 25, ¶ 14.  The appellant need not prove that the matter disclosed actually established one of the types of wrongdoing listed under section 2302(b)(8)(A); rather, she must only show that she possessed a reasonable belief.  *Id.*  The test to determine whether a putative whistleblower had a reasonable belief in the disclosure is an objective one:  whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the agency evidenced a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.  *Gabel v. Department of Veterans Affairs*, 2023 MSPB 4, ¶ 6.  An appellant must identify a specific law, rule, or regulation that the agency purportedly violated, but she need not identify it by title or number for her disclosures to be protected when the "statements or circumstances clearly implicate an identifiable violation of law, rule, or regulation."  *Langer v. Department of the Treasury*, 265 F.3d 1259, 1266 (Fed. Cir. 2001); *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 24 (2015); *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 19 (2013).  Further, disclosures must be specific and detailed, not vague, conclusory allegations of wrongdoing based on unsupported speculation.  *Gabel*, 2023 MSPB 4, ¶ 6; *see El v. Department of*

*Commerce*, 123 M.S.P.R. 76, ¶ 6 (2015) (stating that vague, conclusory, unsupported, and pro forma allegations of alleged wrongdoing do not meet the nonfrivolous pleading standard necessary to establish Board jurisdiction over an IRA appeal), *aff'd*, 663 F. App'x 921 (Fed. Cir. 2016); *Sobczak v. Environmental Protection Agency*, 64 M.S.P.R. 118, 122 (1994) (finding that disclosures constituting unsupported speculation do not meet the jurisdictional requirements in an IRA appeal).

*Disclosure 1*

¶12 The first of the appellant's alleged disclosures concerned meetings between agency officials and a Government contractor, which the appellant believed were improper. *E.g.*, IAF, Tab 18 at 3. The appellant presented a sworn statement specifically describing these alleged disclosures. IAF, Tab 7 at 4. She also provided testimony from a deposition taken during her Board appeal about the same matter. IAF, Tab 64 at 51-62. According to the appellant, she believed that the meetings, which she attended, violated a law, rule, or regulation because they provided the Government contractor with information that was not public, thereby giving the contractor an unfair advantage over others. IAF, Tab 7 at 4. The appellant further alleged that she believed that the meetings were improper because they were not attended by the type of agency official authorized to hold meetings with potential contractors. *Id.*

¶13 The administrative judge found that this set of disclosures was not protected. She reasoned that the disclosures were too vague and conclusory. ID at 13-14. She further reasoned that the disclosures did not rise to the level of an abuse of authority, ID at 15, gross mismanagement, ID at 16, or a violation of law, rule, or regulation, ID at 16-17. Finally, the administrative judge found that the appellant did not establish that she had a reasonable belief regarding her disclosures because, inter alia, her duties were unrelated to contracting or

procurement and the record contained virtually no information about any underlying contract. ID at 17.

¶14    The appellant disagrees with the administrative judge. PFR File, Tab 3 at 22-24. For instance, the appellant argues that her disclosures were sufficiently specific to show that she reasonably believed that the meetings violated contracting laws and regulations. *Id.* at 22. She also argues that the administrative judge erred by relying in part on the appellant not recalling or presenting evidence about some potentially pertinent facts, such as ones about procurement training, which she had cited as giving her reason to believe the meetings were improper. *Id.* We disagree.

¶15    The appellant's first-line supervisor, who directed the meetings in question and was a recipient of the appellant's disclosures about the meetings, submitted a sworn statement. He described the meetings, why they were proper, and why the appellant's concerns were mistaken. IAF, Tab 84 at 87. Another agency official submitted a similar, though less detailed, sworn statement. *Id.* at 97. Among other things, these officials indicated that no non-public information was revealed, there was no solicitation for a contract at the time or in the period that followed, and the meetings merely constituted permissible market research to determine whether the contractor—who had an existing contract with the agency for a different product—had software that could someday replace the agency's outdated systems. *Id.* at 87, 97.

¶16    The head of the agency's contracts branch also submitted a sworn statement about the matter. *Id.* at 107-08. Among other things, he stated that after the appellant telephoned him with her concerns in November 2019, he met with her, and it was evident that she was new to the Government and did not understand the acquisition process. *Id.* at 108. He further stated that he explained to the appellant "that a meeting with a contractor aimed at determining what [an] industry is capable of providing is beneficial to [the agency] and is permissible market

research." *Id.* Notably, he also contradicted the appellant's sworn statement to the extent that the appellant indicated that her disclosure caused him to stop similar meetings from happening in the future. *Compare id.*, *with* IAF, Tab 7 at 4.

¶17 As set forth above, the appellant was not required to disclose actual wrongdoing; she only needed to have a reasonable belief that her disclosures evidenced one of the kinds of wrongdoing set forth in 5 U.S.C. § 2302(b)(8). Nevertheless, we agree with the administrative judge that the appellant did not meet that burden. The record indicates that the agency was merely meeting with an existing contractor and was not entertaining bids, soliciting a contract, or anything of the sort. Nevertheless, the appellant seems to have assumed that something far more nefarious was occurring, vaguely speculating that something was amiss. She did so after only a few months of Government employment regarding topics that were far outside her expertise or job duties as a Public Affairs Specialist and despite an explanation from the head of contracting regarding why what she observed was not improper.[2] *E.g.*, IAF, Tab 12 at 22-24, Tab 84 at 65, 86-87. Under these circumstances, the appellant has not proven by preponderant evidence that she reasonably believed that the situation she disclosed constituted a violation of law, rule, regulation, or any other type of wrongdoing described in the whistleblower statute.

---

[2] The appellant argues that, because she lacked training and knowledge in the area of Government contracting, she would reasonably believe that a wider range of action would constitute a violation of law, rule, or regulation. PFR File, Tab 3 at 24. The appellant cites no legal authority binding on the Board to support this position, and we are unaware of any such authority. The Board has relied on an employee's experience in a particular field to find that a disclosure about wrongdoing in that field was reasonable. *See, e.g.*, *Cooper v. Department of Veterans Affairs*, 2023 MSPB 24, ¶ 17 (finding an employee's disclosure about a violation of the Federal Acquisition Regulations reasonable in light of her experience as a senior acquisitions professional). We are not persuaded that, under the facts of this appeal, the appellant's lack of knowledge helps her meet her burden of showing a reasonable belief.

*Disclosure 2*

¶18     The next set of alleged disclosures revealed that the appellant's second-line supervisor was instructing employees to backdate certain files relating to congressional inquiries. *E.g.*, IAF, Tab 18 at 3. The appellant's sworn statement from below further described the same, as did her deposition testimony. IAF, Tab 7 at 5, Tab 64 at 39-42.

¶19     The administrative judge found that the appellant did not prove that she made protected disclosures about this alleged changing of dates. She reasoned that the allegations were vague, conclusory, unsupported, and that a reasonable person in the appellant's position would not believe that it revealed the type of wrongdoing protected under the statute. ID at 17-19. The appellant disagrees. PFR File, Tab 3 at 24-25. Among other things, the appellant suggests that additional details about the alleged wrongdoing were unimportant or not available due to the administrative judge's discovery rulings. *Id.* We are not persuaded by the appellant's arguments.

¶20     The appellant describes making these disclosures within weeks of joining the agency, when it is likely that she had limited information about the agency's processes. IAF, Tab 7 at 5. Additionally, although the appellant described making this disclosure alongside another coworker who had similar concerns, IAF, Tab 64 at 40-41, she has not identified any statement from that individual to corroborate her claims, nor has she challenged any particular ruling by the administrative judge that may have prevented her from doing so.

¶21     In addition, the alleged wrongdoer, who was the appellant's second-level supervisor and one of the alleged recipients of the appellant's disclosure, stated in a sworn declaration that he never instructed employees to improperly change dates, and he did not recall any disclosure about the matter. IAF, Tab 84 at 76-77. Another official, who was not in the appellant's chain of command but who was responsible for the appellant's training, indicated that the

appellant did raise these concerns with him. *Id.* at 97. However, he explained that the dates, which were for internal tracking and routing purposes only, were never used to deceive anyone. *Id.* The appellant has herself acknowledged that the dates were for internal routing use only. IAF, Tab 64 at 39.

¶22 After reviewing this evidence, we do not see how the disclosure implicated one of the types of wrongdoing set forth in the whistleblower protection statutes. If there was any manipulation of dates, it seems most likely that this was little more than an internal method of alerting the commanding officer to prioritize one matter over another. *E.g.*, IAF, Tab 84 at 76, 97. There is nothing suggesting that letters to Congress or any other outside entity were misdated. The appellant's vague speculation that there was something amiss, let alone a violation of law, rule, or regulation, does not meet her burden to prove by preponderant evidence that she made a protected disclosure. We therefore agree with the administrative judge's conclusion that the appellant did not do so.

*Disclosure 3*

¶23 The third set of alleged disclosures were June 2019 statements that the appellant feared a particular coworker might bring a firearm to the office to commit a mass shooting. *E.g.*, IAF, Tab 18 at 3. Once again, this alleged disclosure is recounted in more detail in the appellant's sworn statement and deposition. IAF, Tab 7 at 5-6, Tab 64 at 46-51.

¶24 The administrative judge found that the appellant did not have a reasonable belief that she was disclosing a substantial and specific danger to public health or safety or any other category of wrongdoing under the whistleblower protection statutes. ID at 20-23. Among other things, she explained that, while the appellant had described offensive language used by this coworker and violent stories told by the coworker about his past active-duty military service, the appellant did not present any persuasive argument or evidence about his propensity for violence at the workplace. The appellant did not, for example, present

argument or evidence that the individual was angry at his colleagues or under duress. ID at 21-22. To the contrary, the appellant denied ever hearing the coworker threaten or direct anger at anyone in the office. IAF, Tab 64 at 48. For these reasons, the administrative judge concluded that the appellant did not have a reasonable belief that the coworker was likely to bring a firearm to the office and commit a mass shooting. ID at 21-23.

¶25 On review, the appellant suggests that she disclosed not only this coworker's offensive language and violent stories but also that he had brought a gun to the workplace. PFR File, Tab 3 at 25-27. However, that allegation is noticeably absent from the sworn statement and deposition testimony referenced above. IAF, Tab 7 at 5-6, Tab 64 at 46-51. In that evidence, the appellant discussed why she worried that her coworker might bring a gun to the workplace without any indication that he had done so. IAF, Tab 64 at 46-51. She even indicated that she was unsure whether this individual owned a gun, though she inferred that he did. *Id.* at 50. The limited evidence that the appellant cites on review is no different. PFR File, Tab 3 at 25 (referencing IAF, Tab 13 at 24-25, 27, 28, Tab 64 at 30, 46).

¶26 The appellant is correct that an individual need not disclose harm that already occurred for the disclosure to be protected. PFR File, Tab 3 at 26; *see Wilson v. Department of Veterans Affairs*, 2022 MSPB 7, ¶¶ 38-40 (finding an appellant's disclosures about potential negative patient outcomes protected); *Chavez*, 120 M.S.P.R. 285, ¶¶ 19-20 (same). But the disclosed potential danger must be substantial and specific. *Chambers v. Department of the Interior*, 602 F.3d 1370, 1376 (Fed. Cir. 2010); *Wilson*, 2022 MSPB 7, ¶ 38. In determining whether a disclosed danger is sufficiently substantial and specific to warrant protection under the whistleblower statute, the Board must consider: (1) the likelihood of harm resulting from the danger; (2) when the alleged harm may occur; and (3) the nature of the harm, i.e., the potential consequences. *Chambers*, 602 F.3d at 1376; *Wilson*,

2022 MSPB 7, ¶ 38. A disclosed danger that could only result in harm under speculative or improbable conditions "should not enjoy protection." *Chambers v. Department of the Interior*, 515 F.3d 1362, 1369 (Fed. Cir. 2008). Further, "a harm likely to occur in the immediate or near future should identify a protected disclosure much more than a harm likely to manifest only in the distant future." *Id.* Here, the potential consequences of the danger were grave, but the appellant's own statements about the matter support a conclusion that the likelihood and imminence of the danger were exceedingly remote. In fact, the appellant's concerns appear to have been little more than unfounded speculation. Therefore, we agree with the administrative judge. The appellant did not meet her burden of proving that her disclosures about the coworker and his potential for violence were protected.

*Disclosure 4*

¶27 The last set of alleged disclosures were ones about sexual harassment in the workplace and her supervisors' handling of the same. *E.g.*, IAF, Tab 18 at 4. This set of disclosures is also recounted in the appellant's sworn statement and contemporaneous documents created by the appellant and an agency investigative report. *E.g.*, IAF, Tab 7 at 6-7, 11, 14-15, 17-19, Tab 13 at 4-21.

¶28 The administrative judge found that the appellant's claim was vague and conclusory, ID at 23-25, and that the claim did not meet the reasonable belief standard, ID at 26-27. The administrative judge explained that the appellant was aware that management was acting on the underlying complaints, and that the appellant was simply dissatisfied with management's explanation that it could not divulge specific details about how it was acting on the matter. ID at 25-27.

¶29 On review, the appellant reasserts that these disclosures were protected by section 2302(b)(8). PFR File, Tab 3 at 19-22. We modify the initial decision to expand on the administrative judge's analysis under that section in light of Board precedent.

¶30    In *Edwards v. Department of Labor*, 2022 MSPB 9, *aff'd*, No. 2022-1967, 2023 WL 4398002 (Fed. Cir. July 7, 2023), which was issued the day before the initial decision in this case, the Board considered a situation somewhat analogous to the situation in this case.  The employee in *Edwards* disclosed and protested his supervisors' alleged race discrimination.  *Id.*, ¶ 2.  He also filed complaints of systemic race discrimination, including one with the agency's Equal Employment Opportunity (EEO) office.  *Id.*  The employee then filed an IRA appeal alleging that the agency engaged in whistleblower reprisal for these disclosures and activities.  *Id.*, ¶¶ 2-3.

¶31    To the extent that the employee in *Edwards* alleged that his disclosures were protected by 5 U.S.C. § 2302(b)(8), the Board found otherwise. The Board held that allegations of discrimination and reprisal for activity that fall under the protections of Title VII, i.e., matters that can be pursued through the EEO process and before the Equal Employment Opportunity Commission (EEOC), are excluded from the protections of 5 U.S.C. § 2302(b)(8).  *Edwards*, 2022 MSPB 9, ¶¶ 10-23.  Here, because the appellant's complaints are protected under Title VII, they are excluded from the protections of § 2302(b)(8).

The appellant did not prove that she engaged in activity protected by 5 U.S.C. § 2302(b)(9)(B).

¶32    In her petition for review, the appellant separately asserts that her disclosures about sexual harassment (Disclosure 4) also constituted activity protected by 5 U.S.C. § 2302(b)(9)(B) and (C).  PFR File, Tab 3 at 19-22.  We modify the initial decision to address these provisions, which the appellant raised below but the administrative judge did not address.  We start by addressing the applicability of section 2302(b)(9)(B).

¶33    Under 5 U.S.C. § 2302(b)(9)(B), it is a prohibited personnel practice to take a personnel action against an employee in reprisal for "testifying for or otherwise lawfully assisting any individual" in "the exercise of any appeal,

complaint, or grievance right granted by any law, rule, or regulation[.]" 5 U.S.C. § 2302(b)(9)(A)-(B); *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 6. This provision does not apply to an individual who has brought a complaint herself. Rather, this provision applies only to individuals who lawfully assist in someone else's appeal, complaint, or grievance. *McCray v. Department of the Army*, 2023 MSPB 10, ¶¶ 23-25; *see Edwards*, 2022 MSPB 9, ¶¶ 27-28.

¶34   Evidence that includes emails from the period leading up to the agency's investigation, IAF, Tab 14 at 4-8, 15-16, the appointment letters for the agency's fact finder, *id.* at 11-13, and the close of investigation report, IAF, Tab 12 at 60, Tab 13 at 4, all indicates that the source of the investigation was the appellant's own complaints. These records do not indicate that the appellant was assisting some other individual's appeal, complaint, or grievance. The appellant's petition for review and the evidence cited in it similarly suggest that the appellant complained on behalf of herself and others, not that she assisted someone else's complaint. PFR File, Tab 3 at 19-20 (referencing IAF, Tab 83 at 9-10). Accordingly, section 2302(b)(9)(B) does not apply to the circumstances at hand.

¶35   We recognize that, in her sworn statement made in this IRA appeal, the appellant vaguely asserts that she "participat[ed] as a witness in support of [a particular coworker's] sexual harassment proceeding." IAF, Tab 7 at 7. But this coworker mostly brushed off questions about whether he had been the victim of sexual harassment during the relevant investigation. IAF, Tab 13 at 7-8, 10, Tab 14 at 15. And we found nothing to suggest that he exercised any appeal, complaint, or grievance of his own about the matter. Accordingly, we find that the appellant has not proven that she engaged in the type of lawful assistance protected by section 2302(b)(9)(B).

The appellant engaged in some activity protected by 5 U.S.C. § 2302(b)(9)(C).

¶36   Section 2302(b)(9)(C) makes it a prohibited personnel practice to take a personnel action against an employee in reprisal for "cooperating with or

disclosing information to the Inspector General (or any other component responsible for internal investigation or review) of an agency, or the Special Counsel, in accordance with applicable provisions of law." As mentioned above, the administrative judge found that the appellant made disclosures to the agency OIG, which constituted activity protected under this provision. ID at 27-28. We agree. However, the appellant also asserted that she engaged in other activity protected under section 2302(b)(9)(C) as she pursued her allegations of sexual harassment in the office and management inaction in addressing it (Disclosure 4). PFR File, Tab 3 at 19-22. We modify the initial decision to address this claim.

¶37 Aside from her activity with the OIG, a September 18, 2019 memorandum from the appellant's second-level supervisor recounts the appellant's reports of sexual harassment in the workplace. IAF, Tab 13 at 81. It also describes the actions the second-level supervisor took in response, including one-on-one discussions with the appellant and convening a group "sensing session" facilitated by the agency's EEO office. *Id.* According to this memorandum, the appellant reached out to one of the sensing session facilitators, after the fact, about her concerns regarding sexual harassment. *Id.* This seems to be a reference to an email from a few days earlier in which the appellant vaguely alluded to "inappropriate comments or behaviors" and "reported sexual harassment or assault." *Id.* at 39.

¶38 A memorandum written by the head of labor and employee relations dated September 25, 2019, recounts this allegation of "inappropriate comments or behaviors" and "reported sexual harassment or assault," as well as the official's meeting with the appellant so the appellant could elaborate.[3] IAF, Tab 14 at 4-5.

---

[3] It appears that the alleged victim of the sexual assault whom the appellant repeatedly referenced did not consider himself to be a victim of sexual assault. Following the appellant's reports, agency officials asked the alleged victim about what happened. IAF, Tab 14 at 15. The alleged victim described turning sideways to squeeze by a coworker, at which point the coworker backed into him. *Id.* The alleged victim described this as a misjudgment on the part of his coworker, but he indicated that he did not consider her actions to be sexual. *Id.*

According to yet another memorandum, the appellant further pursued the matter a few days later with a different agency official. This memorandum describes how the appellant went to the office of a Staff Judge Advocate on September 30, 2019, and described her concerns about sexual harassment in the workplace and inaction by her chain of command about the same. *Id.* at 6. An email from the appellant to the Staff Judge Advocate about their interaction states that she had first tried to contact the agency's EEO office but was unable to do so. *Id.* at 7. The appellant asked the Staff Judge Advocate how she could proceed in a situation like this if she did not want to file a formal EEO complaint. *Id.* at 6-7.

¶39 On October 4, 2019, seemingly in response to one or more of the aforementioned interactions that various agency officials had with the appellant, the Chief of Staff to the Commander of the Naval Sea Systems Command appointed the Assistant to the Deputy Commander for Cyber Engineering to investigate. IAF, Tab 13 at 4, Tab 14 at 11-13. This investigator appears to have conducted the inquiry by himself, interviewing the appellant and others. *See, e.g.*, IAF, Tab 13 at 22-27. During the appellant's interview, she indicated that she declined to file an EEO complaint. *Id.* at 26-27.

¶40 Ultimately, the investigator prepared a "Management Inquiry Report," dated December 11, 2019. *Id.* at 4-21. On February 3, 2020, the Chief of Staff to the Commander of Naval Sea Systems Command issued a memorandum describing how he reviewed and agreed with the investigator's findings of fact. IAF, Tab 12 at 60.

The appellant did not engage in activity within the purview of 5 U.S.C. § 2302(b)(9)(A); thus, that provision does not preclude the appellant's activity from being protected under 5 U.S.C. § 2302(b)(9)(C).

¶41 Section 2302(b)(9)(A) prohibits retaliation for the "exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation— (i) with regard to remedying a violation of [section 2302(b)(8)]; or (ii) other than

with regard to remedying a violation of [section 2302(b)(8)]." 5 U.S.C. § 2302(b)(9)(A)(i)-(ii). In *McCray,* an employee alleged reprisal for having filed grievances, including one that complained of discrimination against a disabled coworker. *McCray*, 2023 MSPB 10, ¶¶ 2-3, 13-14. Guided by the principles of statutory interpretation and prior precedent, the Board found that the employee's grievances fell under section 2302(b)(9)(A) but not section 2302(b)(9)(C). *Id.*, ¶¶ 27-29.

¶42 Among other things, the Board in *McCray* explained that this interpretation was required to read the provisions together and avoid rendering either inoperative or superfluous. *Id.*, ¶ 27. The Board further explained that a contrary interpretation would result in section 2302(b)(9)(C) effectively subsuming all or part of section 2302(b)(9)(A). *Id.* The *McCray* decision then recognized that the Board's jurisdiction in an IRA appeal, such as this one, is limited to activity covered by section 2302(b)(9)(A)(i), (B), (C), or (D). *Id.*, ¶ 30. Because the grievances in *McCray* did not seek to remedy whistleblower reprisal, the Board concluded that they fell under section 2302(b)(9)(A)(ii) and thus outside the Board's jurisdiction. *Id.*

¶43 Here, we find that the appellant's activity does not fall under the purview of 5 U.S.C. § 2302(b)(9)(A) and its protection for "the exercise of any appeal, complaint, or grievance right granted by law, rule, or regulation." The Board has described section 2302(b)(9)(A) activity as that which constitutes an initial step toward taking legal action against an employer for the perceived violation of an employee's rights. *Marcell v. Department of Veterans Affairs*, 2022 MSPB 33, ¶ 6; *Williams v. Department of Defense*, 46 M.S.P.R. 549, 553 (1991). The record does not show that the appellant took that initial step. She declined to file an EEO complaint or anything comparable and chose instead to pursue the matters through other channels, which eventually led to the Assistant to the Deputy Commander for Cyber Engineering conducting an investigation.

Accordingly, the rationale of *McCray* does not apply to the circumstances at hand; because the appellant did not engage in activity within the purview of section 2302(b)(9)(A), that provision does not preclude the appellant's activity from being protected under section 2302(b)(9)(C).[4]

> *Title VII does not preclude the appellant's activity from protection under the investigation cooperation provision of 5 U.S.C. § 2302(b)(9)(C).*

¶44    Before December 12, 2017, the whistleblower protection statutory scheme prohibited reprisal for "cooperating with or disclosing information to the Inspector General of an agency, or the Special Counsel, in accordance with applicable provisions of law."  5 U.S.C. § 2302(b)(9)(C) (2016); *McCray*, 2023 MSPB 10, ¶ 26.  Section 1097(c)(1) of the National Defense Authorization Act for Fiscal Year 2018, Pub. L. No. 115-91, 131 Stat. 1283, 1618 (2017) (2018 NDAA), amended section 2302(b)(9)(C) to provide that, in addition to the Inspector General of an agency or the Special Counsel, a disclosure to "any other component responsible for internal investigation or review" also is protected. *McCray*, 2023 MSPB 10, ¶ 26; *Edwards*, 2022 MSPB 9, ¶ 29.

¶45    While analyzing the pre-2018 NDAA language, the Board held that any disclosure of information to an OIG or OSC was protected, regardless of its content, as long as the disclosure was made in accordance with applicable provisions of law. *Fisher v. Department of the Interior*, 2023 MSPB 11, ¶ 8.  We agree with the position of OSC and several of the amici and find the same broad

---

[4] In its amicus brief, OSC requests that the Board reconsider and overrule *McCray*.  PFR File, Tab 18 at 3, 14-17.  OSC argues that 5 U.S.C. §§ 2302(b)(9)(A) and 2302(b)(9)(C) should not be read to limit or preclude one another and that the *McCray* decision erred in finding otherwise.  PFR File, Tab 18 at 3, 14-17.  Put another way, OSC argues that activity protected under section 2302(b)(9)(A) can also be protected under section 2302(b)(9)(C) and, when that occurs, an employee should be afforded the protections of the latter for purposes of IRA appeal rights with the Board.  PFR File, Tab 18 at 3, 14-17.  Because we find that the appellant's activity is not covered under section 2302(b)(9)(A), we decline to consider the matter further.

protection to be applicable to the amended version of the statute, which applies to this appeal. As of December 12, 2017, any disclosure of information to an OIG, OSC, or any another other component responsible for investigation or review at an agency is protected under 5 U.S.C. § 2302(b)(9)(C), regardless of its content, as long as the disclosure is made in accordance with applicable provisions of law.

¶46 Although the appellant's activity involved statements about sexual harassment, which implicates the protections of Title VII, this does not preclude coverage under 5 U.S.C. § 2302(b)(9)(C). The language of section 2302(b)(9)(C), which covers cooperating with or disclosing "information" to certain entities, is devoid of content-based limitations. This is notably different from the anti-retaliation provision for protected disclosures, which contains explicit content-based limitations and therefore has been interpreted as excluding disclosures that fall under Title VII. 5 U.S.C. § 2302(b)(8); *see, e.g.*, *Spruill v. Merit Systems Protection Board*, 978 F.2d 679, 690-92 (Fed. Cir. 1992); *Williams*, 46 M.S.P.R. at 554. Moreover, although the applicable legislative history of 5 U.S.C. § 2302(b)(8), as discussed by the Board in *Williams*, 46 M.S.P.R. at 553-54, supports a finding that section 2302(b)(1) and (b)(8) are mutually exclusive, we have found no comparable legislative history that would limit 5 U.S.C. § 2302(b)(9)(C) in this way.

> *The appellant's statements to the agency investigator fall within the coverage of 5 U.S.C. § 2302(b)(9)(C).*

¶47 As described previously, the appellant engaged in a series of conversations and activities that we must consider. She participated in a sensing session facilitated by the agency's EEO office, and she separately spoke with the facilitator of that sensing session. IAF, Tab 13 at 81. The appellant also raised her concerns with a Staff Judge Advocate. IAF, Tab 14 at 6. After this, as discussed above, an agency official was designated to conduct an investigation. IAF, Tab 13

at 4, Tab 14 at 11-13. The investigator interviewed the appellant and others before issuing a final investigatory report. IAF, Tab 13 at 4-21.

¶48    In pertinent part, section 2302 defines a "disclosure" as "a formal or informal communication or transmission." 5 U.S.C. § 2302(a)(2)(D). Moreover, section 2302(b)(9)(C) does not distinguish between formal or informal cooperation. Thus, we find that the formality or lack thereof regarding the activity described above is of no consequence when analyzing whether it is protected under section 2302(b)(9)(C). Rather, the key question is whether an appellant's activity was directed to a covered investigatory entity.

¶49    As mentioned previously, section 2302(b)(9)(C) prohibits reprisal for "cooperating with or disclosing information to the Inspector General (or any other component responsible for internal investigation or review) of an agency, or the Special Counsel, in accordance with applicable provisions of law." Thus, regardless of the name of the agency entity, if its function is to conduct internal investigations or review, section 2302(b)(9)(C) applies. The question then becomes what constitutes an agency component responsible for internal investigation or review. Section 2302(b)(8) does not supply such a definition. However, under the principle of statutory construction known as *ejusdem generis* ("of the same kind"), when a general word or phrase follows an enumeration of specific things, the general word or phrase is held to refer to things of the same kind as those specified. *See, e.g.*, *King v. Department of the Air Force*, 122 M.S.P.R. 531, ¶ 7 n.4 (2015). This principle recognizes that the purpose of describing a class by examples and a general catchall phrase is to indicate how extensively a provision is intended to be applied. *Kinney v. Department of Agriculture*, 82 M.S.P.R. 338, ¶ 5 (1999). Therefore, we find that the "other component responsible for internal investigation or review" should be an entity with attributes that are generally "of the same kind" as an Inspector General.

¶50　At the time of the amendment to 5 U.S.C. § 2302(b)(9)(C) that added the "any other component responsible for internal investigation or review" language, the Inspector General Act of 1978, as amended, Pub. L. No. 95-452, 92 Stat. 1101, had established Offices of Inspectors General in designated executive-branch departments and agencies as "independent and objective units" whose responsibilities included, among other things, conducting and supervising audits and investigations of agency programs and operations and improving agency programs and operations by promoting economy, efficiency, and effectiveness and by preventing and detecting fraud and abuse.[5]　5 U.S.C. App. III, § 2.　The Act authorized an Inspector General to, among other things, obtain relevant agency records, conduct investigations, issue reports, and obtain information from witnesses. *Id.*, § 6(a).　An Inspector General is therefore independent from agency line managers, and there is a degree of formality to an investigation or review that is designed to, for example, engage in fact-finding.　We find that agency components as described in section 2302(b)(9)(C) should have similar attributes and functions, although such attributes may vary from agency to agency.　In general, such components will have a degree of independence and objectivity, as well as the authority to investigate or review by taking testimony, collecting evidence, and making findings and recommendations.　We acknowledge that some attributes of an Inspector General under the Act appear to be unique to that position, including being appointed by the President with the advice and consent of the Senate, *id.*, § 3(a); being under the general supervision of the head of an agency or the officer next in rank below such head, *id.*; reporting to Congress on Inspector General activities and reporting suspected violations of criminal law to the Attorney General, *id.*, §§ 5, 4(d); having unfettered access to agency records, *id.*, § 6(a)(1); having the authority to issue subpoenas, enforceable in Federal court, to

---

[5] The Inspector General Act of 1978, which was set out in the former Appendix to Title 5, was repealed and restated by Pub. L. No. 117-286, 136 Stat. 4206, 4361 (Dec. 27, 2022), at 5 U.S.C. § 401 et seq.

obtain information during an investigation, *id.*, § 6(a)(4); and being subject to removal only by the President, *id.*, § 3(b). Given the statutory reference to components "other" than Inspectors General, however, we find that Congress did not intend for such components to have all of these same attributes.

¶51 Applying the principles set forth above, we find that the statutory language's reference to "any" component is broad enough to encompass not just permanent agency components but also ad hoc internal investigations or reviews conducted pursuant to an established agency procedure with authorities and purposes similar to those described above, even if, as in this case, the investigation is performed as a collateral duty by an agency employee.

¶52 Here, the Chief of Staff to the Naval Sea Systems Commander appointed the Assistant to the Deputy Commander for Cyber Engineering to conduct an investigation of specific allegations raised by the appellant involving the agency's Office of Corporate Communications. IAF, Tab 14 at 11-13, Tab 75 at 4. This investigator, therefore, appears to have occupied a position with a degree of independence and objectivity from the Office of Corporate Communications. The initial appointment letter for this "fact finding inquiry" instructed the investigator to gather information and provide a written report surrounding allegations raised by the appellant, guided by identified Department of Defense and agency policies relating to violence prevention and unlawful harassment. IAF, Tab 14 at 12. It also authorized this individual to interview witnesses, draft a summary of their statements for their signature, examine and collect copies of any necessary documentary records, and report findings of fact, including any credibility determinations, in a written report. *Id.* at 12-13. All civilian and military personnel were directed to cooperate with the inquiry unless the investigator discovered facts constituting potential criminal violations. *Id.* at 13. Further, the Assistant to the Deputy Commander for Cyber Engineering was directed to consult with advisors from the agency's Labor and Employee Relations

Office and Office of Counsel. *Id.* The investigator, among other things, submitted a Management Inquiry Report that included signed declarations from numerous witnesses as well as documents provided by witnesses. IAF, Tab 13 at 4-83. Under the circumstances of this case, we find that the appellant's statements to the Assistant to the Deputy Command for Cyber Engineering were protected under section 2302(b)(9)(C).[6] In sum, we find that the appellant engaged in activity protected under 5 U.S.C. § 2302(b)(9)(C) when she complained to the OIG and when she cooperated with and disclosed information to the Assistant to the Deputy Commander for Cyber Engineering.

The appellant did not prove that she engaged in activity protected by 5 U.S.C. § 2302(b)(9)(D), the right to disobey provision.

¶53 The appellant separately argues that her set of disclosures about meetings with a contractor (Disclosure 1) and her set of disclosures about backdating files (Disclosure 2) also constituted activity protected under 5 U.S.C. § 2302(b)(9)(D), and that the administrative judge failed to address these claims. PFR File, Tab 3 at 24-25. Because the appellant is correct that the administrative

---

[6] Although the appellant alleges in her petition for review that she engaged in activity protected by section 2302(b)(9)(C), she does not specify that this activity included her participation in an EEO sensing session or discussions with a facilitator of that session. PFR File, Tab 3 at 21, Tab 10 at 9-10. The same is true of her responses to the Board's request for additional argument about section 2302(b)(9)(C). PFR File, Tab 22 at 9-10. Thus, we do not address whether such activities are covered under section 2302(b)(9)(C). In any event, it appears that the sensing session was initiated by the Director of the Office of Corporate Communications to, in part, "provide a way for people to talk." IAF, Tab 13 at 81-82. It was conducted by EEO office personnel as "facilitators only" to provide the workforce with an opportunity to participate, on a voluntary basis, in a session to voice their concerns and identify possible recommendations or solutions for office improvement in any area they wished to address in an anonymous format. *Id.* at 85. Based on this limited information, even if the appellant had intended to raise such a claim, she has not proven that any cooperation or disclosure of information during the sensing session or to a facilitator would meet the requirements of section 2302(b)(9)(C) as outlined above. Similarly, considering the criteria set forth above, she has not met her burden of proving that, under the facts of this case, the Staff Judge Advocate or any other individual, other than the Deputy Commander for Cyber Engineering who conducted the official investigation, constituted a "component" responsible for internal investigation or review.

judge did not address the claims, we do so now and modify the initial decision accordingly. The statutory provision at issue, section 2302(b)(9)(D), prohibits retaliation for "refusing to obey an order that would require the individual to violate a law, rule, or regulation." 5 U.S.C. § 2302(b)(9)(D); *Fisher*, 2023 MSPB 11, ¶¶ 11-12.

¶54 Regarding the activity associated with Disclosure 1, the appellant has not identified below or on review any particular evidence that she was given an order about the meetings. In her sworn statement, the appellant asserts that her supervisors "correctly perceived that [she] would refuse to violate federal acquisition laws and regulations." IAF, Tab 7 at 5. She also asserts that she "disclosed to [several officials] that [she] was not willing to have any such meetings" with the contractor. *Id.* But the appellant does not recount any order that she do so, followed by a refusal to obey such an order. The appellant's deposition testimony, which provides additional context, states only that "it was implied" that she would be tasked with hosting more of these meetings that she thought were problematic. IAF, Tab 64 at 59-60. Yet the appellant later stated that she was told she would not have to attend future meetings if she did not want to do so. *Id.* at 61. For these reasons, the appellant has not proven that she engaged in activity protected by section 2302(b)(9)(D) regarding these meetings.

¶55 Turning to the activity associated with Disclosure 2, the appellant suggests that she refused to obey an instruction about the backdating of internal agency files. IAF, Tab 7 at 5, Tab 64 at 39-42. The appellant has not, however, directed us to evidence showing that she disobeyed an order. Thus, we again find that the appellant has not proven that she engaged in activity protected by section 2302(b)(9)(D).[7]

---

[7] In light of our finding that the appellant did not disobey an order, we do not reach the issue of whether the appellant showed that an order would have required her to actually violate a law, rule, or regulation. *See* 5 U.S.C. § 2302(b)(9)(D).

<u>The appellant proved the contributing factor element of her burden.</u>

¶56    Another element of an appellant's burden of proof in an IRA appeal, such as this one, is proof that her protected disclosure or activity was a contributing factor in the contested personnel action. *Turner*, 2023 MSPB 25, ¶ 12. One way to meet this burden is through the knowledge/timing test, which allows an appellant to demonstrate that the protected activity was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure or activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that it was a contributing factor in the personnel action. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 63.

¶57    The administrative judge found that the appellant met her burden of proving the contributing factor element of her case for her protected OIG activity because the agency removed her just days after learning of her OIG complaint. ID at 28-29. We agree. We modify the initial decision to also find that the appellant established the contributing factor element in connection with the other activity we found protected under section 2302(b)(9)(C). Among other things, the individual who signed the appellant's termination letter in January 2020 was among those interviewed by the agency investigator about the appellant's allegations just 1 month earlier. IAF, Tab 12 at 25-32, Tab 13 at 4, 98-99; *see* 5 U.S.C. § 1221(e)(1).

<u>The agency proved that it would have taken the same probationary termination in the absence of the appellant's protected whistleblowing.</u>

¶58    Once an appellant presents a prima facie case of whistleblower reprisal by proving that she made protected disclosures or engaged in protected activity that was a contributing factor in a covered personnel action, the burden shifts to the agency. *Soto*, 2022 MSPB 6, ¶ 6. In determining whether an agency has met its burden of proving that it would have taken the same personnel action in

the absence of the protected activity, the Board will consider all of the relevant factors, including the following: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who do not engage in such protected activity, but who are otherwise similarly situated. *Id.*, ¶ 11 (citing *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999)). These are commonly called the *Carr* factors. In making its determination, the Board must consider all of the pertinent evidence in the record and must not exclude or ignore countervailing evidence by only looking at the evidence that supports the agency's position. *Soto*, 2022 MSPB 6, ¶ 11; *see Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012) ("Evidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion"). The factors are not viewed as discrete elements, each of which the agency must prove by clear and convincing evidence; rather, the Board weighs these factors together to determine whether the evidence is clear and convincing as a whole. *Soto*, 2022 MSPB 6, ¶ 13.

¶59 After recognizing these standards, the administrative judge found that the agency met its burden. ID at 29-41. In short, the administrative judge found that the agency had strong evidence in support of the probationary termination, ID at 31-40, and that the responsible officials had no real motive to retaliate, ID at 41. The administrative judge made no findings about comparator employees, i.e., *Carr* factor 3.

¶60 On review, the appellant disagrees with the administrative judge's analysis. PFR File, Tab 3 at 28-38. For example, she suggests that her chain of command responded to Disclosures 1 and 2 by accusing her of not being a "team player," and she argues that this reflects retaliatory animus. *Id.* at 28 (referencing

IAF, Tab 7 at 5). In addition, the appellant asserts that the agency's justification for her probationary termination was especially weak. *Id.* at 29, 32. The appellant also points to a passage of the termination letter stating that the appellant "instigated and escalated interactions," and she argues that this and other similar rationales were, in effect, the agency citing her whistleblowing as a basis for the probationary termination. *Id.* at 29-30, 33 (referencing IAF, Tab 12 at 27-28). The appellant further asserts that there were just days between her OIG complaint and her probationary termination, *id.* at 30-31, the administrative judge failed to recognize that her first- and second-level supervisors had a motive to retaliate for the complaint, *id.* at 34-36, and the initial decision is silent as to any comparator evidence regarding how the agency treats similarly situated nonwhistleblowers, *id.* at 37-38. As discussed below, we modify the administrative judge's *Carr* factor analysis but reach the same conclusion that the agency proved by clear and convincing evidence that it would have taken the same probationary termination absent the appellant's protected activity.

*Carr Factor 1*

¶61 Regarding the strength of the evidence in support of the appellant's probationary termination, we agree with the administrative judge that this evidence is strong. ID at 31-40. As further detailed in the initial decision, there is ample evidence of the appellant's inability to get along with either coworkers or supervisors during her short time with the agency.

¶62 To illustrate with a few examples, in a written declaration that the appellant's second-level supervisor apparently made following a November 2019 interview, he characterized the appellant as "inflexible," "rigid," and unwilling to learn how the agency "does business." IAF, Tab 13 at 76. He further recounted how the appellant would routinely cut people off to interject her unsolicited opinions or engage in other such conduct. *Id.* at 76-78. The second-level supervisor also drafted a memorandum for the record in December 2019 describing

a meeting in which the appellant aired numerous and seemingly petty grievances about interactions with colleagues. IAF, Tab 12 at 34. He also described how the appellant "borderline badger[ed]" him about office supplies at this meeting, how she was "condescending and abrupt," how she was "borderline hostile," and how this was an "on-going pattern." *Id.* at 34-35.

¶63 Subsequently, the appellant's management chain drafted additional memoranda describing the appellant's conduct in more detail, including her coworkers' complaints about that conduct. *E.g.*, *id.* at 37-38, 75-77. Among other things, this included the appellant engaging in hostile and unprofessional conduct, repeatedly interrupting superiors and colleagues, intentionally ignoring members of her team, and stating that she would no longer meet with colleagues unless a member of Human Resources was also present. *Id.* at 75-77. Much of this is corroborated by other evidence, such as emails from the appellant's coworkers. *Id.* at 86-87. One of those coworkers described how she and the appellant had a friendly relationship in and out of the office, but that the relationship abruptly changed when the appellant became angry about the coworker using a shared printer, thereby delaying the appellant's use of the same. *Id.* According to this coworker, the appellant had begun to wage a "Cold War" in the office, "creating a toxic environment," causing this coworker to dread her workdays. *Id.* at 86.

¶64 Accordingly, the agency had strong reasons for terminating the appellant during her probationary period, a period during which agencies are encouraged "as fully as possible to determine" the individual's fitness for Federal employment. 5 C.F.R. § 315.803(a).

*Carr Factor 2*

¶65 Turning to the motive to retaliate, the administrative judge reasoned that the appellant's first- and second-level supervisors, i.e., the ones most responsible for the appellant's probationary termination, had no motive to retaliate for her protected whistleblowing activity with the OIG, as demonstrated by them

facilitating that activity. ID at 41. In making this finding, the administrative judge provided almost no analysis. Accordingly, we modify the administrative judge's analysis and also consider the additional activity that we found to be both protected and a contributing factor in the appellant's probationary termination.

¶66    When the officials responsible for a personnel action are the subject of the appellant's protected activity, those officials generally have a strong motive to retaliate. *Young v. Department of Homeland Security*, 2024 MSPB 18, ¶ 30; *Elder v. Department of the Air Force*, 124 M.S.P.R. 12, ¶ 45 (2016) (finding a strong motive to retaliate when the deciding official was the subject of a prior settlement agreement involving the appellant). The precise strength of that motive will depend on an examination of all of the record evidence. *See Whitmore*, 680 F.3d at 1368; *Soto*, 2022 MSPB 6, ¶ 11. Furthermore, officials responsible for the overall performance of the agency may have a motive to retaliate to the extent that criticism of the institution may reflect on them in their capacity as managers and employees. *Whitmore*, 680 F.3d at 1370; *Wilson*, 2022 MSPB 7, ¶ 65.

¶67    That the appellant's protected activity directly implicated the agency officials most responsible for the appellant's termination suggests a strong motive to retaliate. On the other hand, while not precluding a motive to retaliate, we must also consider that they facilitated some of the appellant's protected activity, that the allegations of wrongdoing were seemingly without merit, and that the officials had suffered no adverse consequences at the time they took the personnel action

because of the appellant's activity.[8]  Considering all of the evidence, we find that there was some motive to retaliate but that it was not very strong.

*Carr Factor 3*

¶68   Turning to the last *Carr* factor, any evidence that the agency takes similar actions against employees who do not engage in protected activity but who are otherwise similarly situated, the administrative judge made no findings.  Thus, we address that matter now.

¶69   During the proceedings below, the agency presented argument and evidence about another individual who was not a whistleblower but who was terminated during the individual's probationary period around the same time as the appellant's probationary termination.  IAF, Tab 66 at 50, 53-60, Tab 84 at 33, 110-11.  However, that individual was terminated for a mix of poor performance and conduct.  IAF, Tab 66 at 53-57.  The Board has held that the requirement that comparator employees for *Carr* factor purposes be "similarly situated" does not require "virtual identity;" rather, "[d]ifferences in kinds and degrees of conduct between otherwise similarly situated persons within an agency can and should be accounted for."  *Whitmore*, 680 F.3d at 1373; *Chavez*, 120 M.S.P.R. 285, ¶ 34. Nevertheless, we cannot conclude that the comparator identified by the agency is similarly situated for these purposes given the information provided about the potential comparator.

---

[8] In her petition for review, the appellant notes that the investigator's final report criticized the appellant's supervisors for not addressing the appellant's sexual harassment allegations in a more timely manner.  PFR File, Tab 3 at 36; *see* IAF, Tab 13 at 21.  This argument is not particularly persuasive regarding the issues presented by this appeal because the report was issued long after the appellant's probationary termination.  We also recognize that a retaliatory motive could stem from an official's frustration about an employee's continued misplaced allegations of wrongdoing rather than a genuine concern that the whistleblowing revealed wrongdoing by the official.  Nevertheless, considering all of the evidence in this matter, any motive to retaliate was not particularly strong.

¶70 On review, the appellant attempts to compare herself to a different employee whom she describes as being subject to lesser discipline for more egregious conduct. PFR File, Tab 3 at 37. But we have no indication that this individual was a probationary employee, like the appellant, and the appellant has not directed us to any argument or evidence about how this individual might otherwise be similarly situated. Thus, this individual is not a valid comparator. Accordingly, neither the agency nor the appellant has produced evidence of how the agency treats similarly situated employees who are not whistleblowers.

¶71 The agency does not have an affirmative burden to produce evidence concerning each and every *Carr* factor, and "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis." *Whitmore*, 680 F.3d at 1374-75; *Soto*, 2022 MSPB 6, ¶ 18. However, the failure to produce such evidence, if it exists, "may be at the agency's peril," could "cut slightly against" the agency, and "may well cause the agency to fail to prove its case overall." *Miller v. Department of Justice*, 842 F.3d 1252, 1262 (Fed. Cir. 2016); *Whitmore*, 680 F.3d at 1374-75; *Soto*, 2022 MSPB 6, ¶ 18. If either or both of the first two *Carr* factors do not support a finding that the agency would have taken the same personnel action absent the disclosure or protected activity, the agency's failure to present evidence of the third *Carr* factor may prevent it from carrying its overall burden. *Smith v. Department of the Army*, 2022 MSPB 4, ¶¶ 26-30; *see also Miller*, 842 F.3d 1252, 1259-63.

¶72 Because it is the agency's burden to prove by clear and convincing evidence that it would have taken the same personnel action in the absence of the appellant's protected activity, the third *Carr* factor cannot weigh in the agency's favor when the agency fails to introduce relevant comparator evidence. *Smith v. General Services Administration*, 930 F.3d 1359, 1367 (Fed. Cir. 2019); *Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018); *Soto*, 2022 MSPB 6, ¶ 18. Here, the agency has introduced some comparator evidence,

but its evidence is insufficient to show that the proffered comparator is in fact appropriate. Under the particular circumstances of this case, we find that the agency's failure to introduce complete, fully explained comparator evidence effectively removes this factor from the analysis.

¶73 In conclusion, the agency presented strong evidence in support of the appellant's probationary termination. But agency officials involved in that probationary termination had some motive to retaliate for the appellant's protected whistleblowing activity, and the record contains no persuasive evidence about similarly situated nonwhistleblowers. Considering the evidence as a whole, we find that the agency has proven by clear and convincing evidence that it would have taken the same probationary termination in the absence of the appellant's protected activity. *See* 5 U.S.C. § 1221(e)(2). The agency has, therefore, met its burden of rebutting the appellant's prima facie case of reprisal.

The appellant has not shown that the administrative judge's procedural rulings were an abuse of discretion.

¶74 The appellant asserts that the administrative judge made improper discovery rulings. PFR File, Tab 3 at 38-39. She also contends that the administrative judge improperly disallowed some of her proposed witnesses and that this prompted the appellant to withdraw her hearing request. *Id.* at 39-40. These arguments are unavailing.

¶75 Regarding discovery, the appellant alleges that the agency failed to (1) adequately initiate the discovery process by the designated deadline; (2) provide pertinent information in a deposition notice; (3) timely file a motion to compel; and (4) include a statement of good faith with that motion to compel. *Id.* at 38. The agency disagrees on all counts while providing a more thorough accounting of the circumstances. PFR File, Tab 7 at 5-8.

¶76 The parties presented extensive arguments and evidence about these issues below. IAF, Tabs 28-29. At its heart, the dispute stems from the agency

serving the appellant with a deposition notice by the designated deadline for initiating discovery, wherein the date of the planned deposition was listed as "TBD (1 Full Day May 13-27, 2021)." IAF, Tab 28 at 41. According to the agency, it provided a date range to accommodate scheduling conflicts, including the appellant's planned surgery, in anticipation that the parties would later work together to decide which day worked best. PFR File, Tab 7 at 6; IAF, Tab 28 at 4-5. According to the appellant, the absence of a definitive date rendered the deposition notice invalid, regardless of the agency's reasons. PFR File, Tab 3 at 38; IAF, Tab 28 at 39, Tab 29 at 5. This dispute led to the appellant refusing to participate in a deposition, the agency's motion to compel, the parties' arguments about the same, and the administrative judge compelling the appellant's deposition. IAF, Tabs 28-29, 33.

¶77 An administrative judge has broad discretion in ruling on discovery matters, and the Board will not find reversible error in such rulings, absent an abuse of discretion. *Dieter v. Department of Veterans Affairs*, 2022 MSPB 32, ¶ 25. Under the circumstances described, we do not find that the administrative judge abused that broad discretion.

¶78 The appellant separately asserts that the administrative judge denied her motion to compel certain information and prohibited her from deposing certain officials, all of which hindered her case. PFR File, Tab 3 at 38-39. These issues were also thoroughly developed through competing pleadings and the administrative judge's rulings. *E.g.*, IAF, Tabs 30, 32, 34, 46-51. For example, the administrative judge denied the appellant's request to take the deposition of several agency employees because the appellant waited until several months after the deadline for initial discovery requests and just 2 weeks before the prehearing submissions were due to issue her notice of those depositions, without any explanation for the delay, and because the requested deposition testimony appeared irrelevant. IAF, Tab 51 at 1-2. The appellant's cursory assertion on review that the

administrative judge's discovery rulings hindered her case do not persuade us that this or other similar rulings constituted an abuse of discretion.

¶79 Turning to the issue of the three disallowed witnesses, the appellant summarily asserts that she "made an adequate showing of the relevance each witness would have in this case." PFR File, Tab 3 at 39-40 (referencing IAF, Tab 54 at 22-24). The administrative judge, however, determined that the appellant's proffer of expected testimony for these individuals was speculative, redundant, and not relevant. IAF, Tab 73 at 5. The appellant subsequently withdrew her hearing request without any mention of the administrative judge's rulings about witnesses. IAF, Tab 76.

¶80 An administrative judge has wide discretion to control the proceedings, including the authority to exclude testimony that she believes would be irrelevant, immaterial, or unduly repetitious. *Vaughn v. Department of the Treasury*, 119 M.S.P.R. 605, ¶ 12 (2013). To obtain reversal of an initial decision on the ground that the administrative judge abused her discretion in excluding evidence, the petitioning party must show on review that relevant evidence, which could have affected the outcome, was disallowed. *Id.* Here, the appellant's general assertion that she adequately identified the relevance of her proposed witnesses below does not meet this burden and does not persuade us that the administrative judge erred.

## ORDER

¶81 This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113 (5 C.F.R. § 1201.113).

## NOTICE OF APPEAL RIGHTS[9]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

---

[9] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals

of competent jurisdiction.[10]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[10]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


_Gina K. Grippando_

Gina K. Grippando
Clerk of the Board
Washington, D.C.

CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

### Appellant

Electronic Service      Mary Reese
Served on email address registered with MSPB

### Appellant Representative

Electronic Service      Richard Renner
Served on email address registered with MSPB

### Agency Representative

Electronic Service      Michael Causey
Served on email address registered with MSPB

### Agency Representative

Electronic Service      Kristin Roberts
Served on email address registered with MSPB

### Amicus Curiae

U.S. Mail      Martin Akerman
2001 North Adams Street
Unit 440
Arlington, Virginia 22201

Amicus Curiae

U.S. Mail

Debra D'Agostino
Federal Practice Group, L.L.P.
801 17th Street, NW, Suite 250
Washington, District of Columbia 20006


Amicus Curiae

U.S. Mail

Gregory Giaccio
U.S. Office of Special Counsel
1730 M Street, NW, Suite 300
Washington, District of Columbia 20036


Amicus Curiae

U.S. Mail

Andres Grajales
American Federal of Government Employees, AFL-CIO
80 F Street, NW
Washington, District of Columbia 20001


Amicus Curiae

U.S. Mail

Pere Jarboe
2008 Peggy Stewart Way
Unit 302
Annapolis, Maryland 21401


Amicus Curiae

U.S. Mail

Rosa Koppel
Law Offices of Larry J. Stein, LLC
P.O. Box 752
McLean, Virginia 22101-0752


Amicus Curiae

U.S. Mail

Julie Yeagle
U.S. Office of Special Counsel
1730 M Street, NW, Suite 300
Washington, District of Columbia 20036

_Dinh Chung_

01/31/2025
(Date)

Dinh Chung
Case Management Specialist